IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| PAMELA L. THOMAS, | : | CIVIL ACTION NO. |
| | : | 1:17-CV-3146-TWT-JSA |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| WELLS FARGO BANK, N.A., | : | **NON-FINAL REPORT AND** |
| | : | **RECOMMENDATION ON A** |
| Defendant. | : | **MOTION TO DISMISS** |

The Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq.,* allows a consumer to sue a furnisher of credit information, if that furnisher fails to take adequate steps in response to a properly-lodged dispute. Plaintiff here lodged various disputes over the years regarding a particular item of information allegedly falsely reported by Defendant Wells Fargo Bank, N.A. ("Defendant" or "Wells Fargo"). The issue raised by Defendant's Motion to Dismiss [11] is one of timeliness. According to Defendant, Plaintiff's claims are time-barred, even as to Defendant's compliance with disputes lodged within the limitations period, because Plaintiff began disputing this information prior to the limitations period. In other words, according to Defendant, once the FCRA's two-year statute of limitations runs on any violation regarding the reporting of a particular item of information, any claims based on subsequent failures to investigate new disputes about that same information would likewise be time-barred.

Legal authorities are split on this question and there appears to be no binding precedent in this Circuit. Nevertheless, the Court rejects Defendant's application of the statute of limitations, based both on the weight of the case law as well as the plain language of the statute. Each failure to investigate after a dispute, after all, is itself a new violation, and logically must trigger a new limitations period. It is not disputed for purposes of this motion that the Complaint alleges at least some violations within the limitations period. Thus, the Court **RECOMMENDS** that the Motion to Dismiss [11] be **DENIED**.

## I.   BACKGROUND

Plaintiff asserts that Wells Fargo negligently and willfully violated the FCRA. *See* Compl. ¶¶ 82, 85. Defendant filed its Motion to Dismiss [11] on October 6, 2017; Plaintiff filed a Response [14] ("Pl. Br.") on October 20, 2017, and Defendant filed a Reply [15] ("Def. Reply Br.") in further support of its Motion to Dismiss on November 3, 2017.

The following facts are taken from Plaintiff's allegations in the Complaint [1] and are assumed to be true for the purpose of this discussion.

Plaintiff took out a home equity line of credit ("HELOC") with Wells Fargo in October 2003. Compl. ¶ 20. Since then, Plaintiff has diligently made the payments

required, and has never been 30 or more days late for any installment. Compl. ¶ 21.

Specifically, Plaintiff made the following six payments in 2012:

> January 25, 2012 payment: $223.18 on February 21, 2012
> February 25, 2012 Payment: $225.00 on March 19, 2012
> March 25, 2012 Payment: $225.00 on April 3, 2012
> April 25, 2012 Payment: $225.00 on April 27, 2012
> May 25, 2012 Payment: $250.00 on June 8, 2012
> June 25, 2012 Payment: $235.00 on June 29, 2012

Compl. ¶ 22. Plaintiff received a transaction record receipt from Wells Fargo, showing the payment date and amount, for each of the above transactions. Compl. ¶ 23.

Around the time of the above transactions, Wells Fargo began reporting to several credit reporting agencies, including Trans Union and Innovis, that at least two payments within that time period had been thirty or more days late. Compl ¶ 25. Plaintiff first became aware that there might be an issue with Wells Fargo's credit reporting about the HELOC when she began receiving adverse action notices from creditors and potential creditors in the Spring of 2012. Compl. ¶ 27. She sent Wells Fargo's Credit Bureau Dispute Department a letter dated June 15, 2012 in which she explained that she had never been 30 or more days late for any payments, and enclosed documentation of her payment transactions. Compl ¶ 28. Wells Fargo responded in a letter dated June 19, 2012 in which Wells Fargo claimed to have corrected the error; the letter stated, "We have now updated the following

information to the major consumer reporting agencies . . . [t]he delinquencies reported in March 2012 and May 2012 have been removed." Compl. ¶ 29.

Still, consumer reporting agencies including Trans Union and Innovis continued to report in Plaintiff's consumer reports that Plaintiff had been more than 30 days late in making some payments on her Wells Fargo HELOC. Compl. ¶ 30. Plaintiff received more adverse actions as a result of her credit reports by August 2014. Compl. ¶ 31. Accordingly, Plaintiff again disputed the item on her reports that stated that she had been more than 30 days late on some payments on the HELOC. Compl. ¶ 32. Wells Fargo responded in a letter dated September 4, 2014, in which Wells Fargo contradicted its June 19, 2012 letter, and stated that Plaintiff had in fact been thirty or more days delinquent on two payments: the February 25, 2012 installment, and the March 25, 2012 installment. Compl. ¶ 33. Wells Fargo claimed that those two installments had been made on April 3, 2012, and April 27, 2012, respectively. *Id.* Thus, Wells Fargo did not acknowledge or account for the March 19, 2012 payment to the February 25, 2012 installment. Compl. ¶ 34. Wells Fargo instead misapplied the April 3, 2012 payment to the February 25, 2012 installment. Compl. ¶ 35.

Wells Fargo's error caused it to issue an erroneous report to each of the major credit reporting agencies. Compl. ¶ 36. Next, in response to a credit bureau dispute

4

by Thomas, in a letter dated October 6, 2014, Wells Fargo again stated that the February 25, 2012 installment was paid on April 3, 2012—Wells Fargo thereby continued to ignore the March 19, 2012 payment. Compl. ¶ 37. Later, in another letter dated June 9, 2016 responsive to a dispute by Thomas, Wells Fargo again maintained its position that the February 25, 2012 installment was paid April 3, 2012. Compl. ¶ 38. Even though Wells Fargo had provided Plaintiff with a transaction receipt for each payment she had made, Wells Fargo never again acknowledged or accounted for the fact that the February 25, 2012 installment was paid March 19, 2012, and the fact that the March 25, 2012 installment was paid April 3, 2012. Compl. ¶ 39.

Plaintiff disputed the 30-days-late matter several times with Experian, Equifax, and Trans Union, and both Experian and Equifax removed the 30-days-late item from her credit report: Plaintiff's Experian and Equifax credit reports reflect that she did not make any payments on her HELOC 30 or more days late. Compl. ¶ 40.

In a letter to Trans Union dated August 2, 2016, Plaintiff again disputed the 30-days-late matter; Plaintiff enclosed with her letter copies of all relevant transaction record receipts, as well as cancelled checks where the payments were made—conclusively showing that she had not been 30 or more days late on her

March 25, 2012 installment. Compl. ¶ 41. In its September 7, 2016 investigation results, however, Trans Union reaffirmed the item in its reports stating that Plaintiff made payments thirty days late. Compl. ¶ 42. Plaintiff again disputed the 30-days-late matter in a letter to Trans Union dated March 1, 2017. Compl. ¶ 43. Plaintiff enclosed with her March 1, 2017 letter copies of transaction record receipts, cancelled checks, bank statements from the relevant time period, and a letter of explanation from Wells Fargo stating that Plaintiff has only one HELOC. *Id.* Trans Union once again reaffirmed the 30-days-late item, in its March 23, 2017 investigation results. Compl. ¶ 44.

Around this time, Plaintiff became aware that Innovis was also reporting that she had paid her March 25, 2012 HELOC installment over thirty days late. Compl. ¶ 45. Plaintiff sent an "Innovis Investigation Request Form" to Innovis dated April 6, 2017, and included copies of transaction record receipts, cancelled checks, bank statements for the relevant time period, and the letter of explanation from Wells Fargo. Compl. ¶ 46. Innovis, in its April 19, 2017 investigation results, reaffirmed the thirty-days-late payment. Compl. ¶ 47. The "adverse tradeline" stating that Plaintiff's March 25, 2012 installment was paid over 30 days late was still in Plaintiff's consumer reports as of the date she filed her Complaint, August 18, 2017. Compl. ¶ 48.

The actions of the defendants originally named in the Complaint, including Wells Fargo, have caused Plaintiff the loss of credit opportunities, tarnished her name and credit worthiness, and caused her to have to spend substantial time and energy to try to clear the false adverse information in her credit file to no avail. Compl. ¶ 49. Plaintiff has suffered, as a result of these actions, emotional distress, anxiety, frustration, embarrassment, humiliation, and annoyance. Compl. ¶ 50.

Plaintiff asserts two Counts for relief against Wells Fargo. *See* Compl. ¶¶ 79–88.[1] In Count I, Plaintiff asserts that Wells Fargo negligently violated § 1681s-2(b) of the FCRA, and seeks actual damages and attorney's fees under § 1681o(a). *See* Compl. ¶¶ 79–84. In Count II, Plaintiff asserts that Wells Fargo willfully violated § 1681s-2(b) of the FCRA, and seeks actual damages, punitive damages, and attorney's fees under § 1681n(a). *See* Compl. ¶¶ 85–88.

## II.   DISCUSSION

### A.   *Standard on a Motion to Dismiss*

When evaluating a motion to dismiss under Rule 12(b)(6), the Court cannot consider matters outside of the pleadings, and must accept the allegations of the

---

[1] Plaintiff originally asserted six Counts for relief, but as Counts III–VI were asserted against defendants who have since been dismissed from this action, those Counts are likewise dismissed, and only Counts I and II remain. References to the Complaint, or to Plaintiff's claims, hereinafter, accordingly refer to Counts I and II only.

non-movant's pleadings as true, but "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Moreover, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted).

Violation of an applicable statute of limitations is an affirmative defense, and it is not generally necessary for a plaintiff to plead facts showing compliance with the statute of limitations in a complaint. *La Grasta v. First Union Securities*, 358 F.3d 840, 845 (11th Cir. 2004). However, a complaint may still be subject to dismissal under Rule 12(b)(6) if the facts alleged or incorporated into the complaint definitively show that the claims were untimely filed. *See id.* at 845–46.

B.    *Motion to Dismiss*

Defendant argues that Plaintiff's claims should be dismissed because they are barred by the FCRA's statute of limitations. *See* Def. Br. at 1–2. Specifically, Defendant asserts that Plaintiff discovered the alleged violation more than two years before she filed her Complaint. *See id.* at 5; 15 U.S.C. § 1681p(1)–(2) (FCRA statute of limitations is the earlier of two years after the date of the discovery by the plaintiff

of the FCRA violation, or five years after the date on which the violation occurs).

Defendant cites Plaintiff's allegation that she first discovered that there might be an

issue with Wells Fargo's credit reporting of her HELOC when she began receiving

action notices from creditors and potential creditors in the Spring of 2012. *See id.*

(citing Compl. ¶ 27). Defendant also cites Plaintiff's allegation that she sent a

dispute letter to Wells Fargo in June 2012. *See id.* (citing Compl. ¶ 28). Defendant

states that the statute of limitations on Plaintiff's claims began running in the Spring

of 2012 when she discovered an FCRA violation, and expired in the Spring of 2014.

*See id.* at 6. At most, Defendant argues that the statute of limitations began to run

after Plaintiff discovered, in 2014, that Defendant had re-reported or had failed to

delete the information. Either way, according to Defendant, the Complaint was

time-barred by the time this case was filed in 2017.

Defendant argues that none of the subsequent disputes that Plaintiff submitted

concerning her credit report operates to extend the statute of limitations. In support,

Defendant cites three district court opinions. First, in *Blackwell v. Capital One Bank*,

No. 606CV066, 2008 WL 793476, at **1–3 (S.D. Ga. Mar. 25, 2008), the plaintiff

submitted two disputes to credit reporting agencies about a line in her credit reports

stating that she had opened a Capital One credit card account and that it had been

closed due to the account being delinquent or past due for more than 180 days. The

first of the plaintiff's disputes was submitted in 2003, and the second in 2005, and her complaint was filed in 2006. *See id.* at **1–2. The parties agreed that the 2003 dispute was outside the statute of limitations, but the plaintiff argued that the 2005 dispute created a new violation of the FCRA because Capital One was required to investigate her dispute again even though it was over a previously disputed account. *See id.* at *2. The court rejected the plaintiff's argument, stating that to allow the plaintiff to base her claims on the 2005 dispute would "allow plaintiffs to indefinitely extend the limitations period and render it a nullity." *See id.* at *3. The court accordingly dismissed the plaintiff's claims on the basis that the two-year statute of limitations began running in 2003, rendering her 2006 complaint untimely. *See id.; see also Bittick v. Experian Information Solutions, Inc.*, 419 F. Supp. 917, 919 (N.D. Tex. 2006); *Hancock v. Charter One Mortg.*, No. 07-15118, 2008 WL 2246042, at *2 (E.D. Mich. May 30, 2008).

Plaintiff argues that Defendant's conception of the accrual of the statute of limitations is simply incorrect: according to Plaintiff's argument, the cause of action in her Complaint accrued in 2016 and 2017 when Wells Fargo "reaffirmed the false information in response to subsequent disputes." *See id.* at 4. Each of Defendant's failures to comply with its FCRA reinvestigation obligations following a dispute, Plaintiff contends, constitutes a new violation of the FCRA subject to its own

limitations period regardless of whether there had been prior disputes. *See id.* Plaintiff argues that her disputes that were submitted in 2016 and 2017 fall within the two-year limitations period. *See id.*

Plaintiff relies principally on three cases that, in contrast to Defendant's cases, have held that subsequent disputes create their own limitations periods even if they concern previously discovered and previously disputed FCRA violations. In the first of these to be decided, *Broccuto v. Experian Information Solutions, Inc.*, No. 3:07CV782-HEH, 2008 WL 1969222, at **3–4 (E.D. Va. May 6, 2008), the court noted the holdings of *Blackwell* and *Bittick*, but stated that it could not "square the logic of those opinions with a plain reading of the FCRA." Under § 1681s-2 of the FCRA, the court stated, upon receipt of notice of a dispute of information provided by it to a consumer reporting agency, a bank or credit reporting agency is then obligated to take the actions outlined in § 1681s-2(b)(1)(A)–(D). *See id.* at *4. The court stated that "[i]t is the failure to act as prescribed by the statute after receiving notice of a dispute which creates the cause of action." *See id.* at *3. Turning to the statute of limitations in § 1681p, the court quoted the statutory language requiring an action to be brought within "2 years after the date of discovery by the plaintiff of the violation that is the basis for . . . liability." *See id.* (quoting 15 U.S.C. § 1681p(1)). Because the "failure to act" is the "violation," the *Broccuto* court held, the plaintiff

must bring the action "within two years from the date he learns that a credit reporting agency or lender did not act as required by the statute in response to his dispute." *See id.* The court concluded that "[t]he fact that the account or transactions questioned in the instant dispute may have also been the subject of a previous dispute does not mitigate the obligations of the bank or credit reporting agency to take the actions outlined in § 1681s-2(b)(1)(A)-(D)."

Second, in *Marcinski v. RBS Citizens Bank, N.A.*, 36 F. Supp. 3d 286, 287 (S.D.N.Y. 2014), a plaintiff discovered in 2010 after viewing his credit report that he was the victim of identity theft, as someone had opened two credit card accounts in his name. The plaintiff submitted a dispute to a consumer reporting agency, as well as to the two furnishers, in the Fall of 2010. *Id.* In 2013, the plaintiff requested another credit report and saw that the two accounts were still listed, so he submitted a second dispute in June 2013 to the consumer reporting agency and filed suit in August 2013. *Id.* The defendants moved to dismiss the plaintiff's complaint on the grounds that the statute of limitations began to run in 2010 and was forever expired even as to subsequent disputes about the same information. *See id.* at 289.

The *Marcinski* court, however, rejected the defendants' argument and denied their motion to dismiss:

> Given the FCRA's language, as well as its purpose, each alleged failure of Defendants to comply with their FCRA obligations constitutes a

separate FCRA violation, even though the violations stem from the same allegedly false or inaccurate credit information. The FCRA explicitly states that the obligations of a furnisher of information arise upon receipt of notice of a consumer's dispute from a credit reporting agency. 15 U.S.C. § 1681s–2(b)(1) ("After receiving notice ... of a dispute with regard to the completeness or accuracy of any information provided by a [furnisher of information] to a consumer reporting agency, [the furnisher of information] shall...."). Thus, each separate notice of dispute triggers a duty to investigate the disputed information, *regardless of whether the information has been previously disputed.*

*Id.* at 290 (emphasis added).

Plaintiff's third cited case comes from this district. In *Bruce v. Homeward Residential, Inc.*, No. 1:14-cv-3325-MHC-AJB, 2015 WL 5797846, at **4, 10 (N.D. Ga. Aug. 31, 2015) (Cohen, J., adopting report and recommendation of Baverman, M.J.), the plaintiff initially disputed information about late payments in his credit report in June 2012, and the defendant—a furnisher of information to consumer reporting agencies—ceased reporting the disputed information. Later, however, the defendant resumed reporting the disputed information and Plaintiff initiated a second dispute in January 2013. *See id.* at *5. The plaintiff filed his complaint in September 2014, more than two years after his June 2012 dispute but within two years of his January 2013 dispute. *See id.* at *4. Citing *Marcinski* and other authorities, the court found that "these separate disputes triggered separate limitations periods." *See id.* at *10. The court therefore dismissed the plaintiff's claim under § 1681s-2(b) insofar as it arose from the June 2012 dispute but found

that the plaintiff's § 1681s-2(b) claim premised on the January 2013 dispute was within the statute of limitations, and could go forward. *See id.* at *11.

Plaintiff argues that these cases interpret the FCRA and reflect its purposes more faithfully than Defendant's authorities do. *See id.* at 19–20. Plaintiff cites two circuit court opinions in which courts have found that Congress intended "'to protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that utilize accurate, relevant, and current information." *See Cortez v. Trans Union, LLC*, 617 F.3d 688, 706 (3d Cir. 2010) (quoting *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995)). In *Cortez*, Plaintiff states, the court stated that "interpretation of this remedial statute must reflect those objectives," and in *Guimond*, the court held that the objectives of the FCRA support a "liberal construction." *See id.*; *see also Jones v. Federated Fin. Reserve Corp.*, 144 F.3d 961, 964 (6th Cir. 1998) (courts interpreting the FCRA are "guided by the fact that the FCRA is to be liberally construed in favor of the consumer").

Defendant, in reply, relies on a case from the District of Kansas to distinguish *Bruce*. *See* Def. Reply Br. [15] at 2–5 (citing *Anderson v. Equifax Information Services LLC*, 274 F. Supp. 3d 1221 (D. Kan. 2017) ("*Anderson*"), *vacated in part on other grounds*, 292 F. Supp. 3d 1211 (D. Kan. 2017)). According to Defendant, in

*Anderson*, the district court distinguished situations in which a defendant corrects a plaintiff's credit report, but then re-reports disputed information, from situations in which the same credit information is continually reported. *See id.* at 3–4 (citing 274 F. Supp. 3d at 1233–34). In *Anderson*, Defendant argues, the court refused to extend the statute of limitations in the latter case because "to allow a plaintiff to extend the limitations period with each subsequent dispute or with each republication of an erroneous credit report based on the same error would extend the limitations period indefinitely." *See id.* (citing 274 F. Supp. 3d at 1234).

Defendant argues that the facts in this case are distinguishable from *Bruce* because, although Plaintiff alleges that Defendant promised to remove, but yet did not remove or republished the information, it remains that Plaintiff discovered this ongoing violation no later than 2014. Thus, according to Defendant, the statute ran by 2016 on any claims based on Plaintiff's 2014 dispute of the information, so the statute of limitations still operated to bar Plaintiff's Complaint in 2017. *See id.* at 5. Defendant also argues that Congress's intent does not favor Plaintiff's position, because as *Anderson* stated, "if Congress intended that a plaintiff be allowed to extend the limitations period with each subsequent dispute or republication of an erroneous credit report, it would have stated so in the statute." *See id.* at 6 (citing 274 F. Supp. 3d at 1234).

It is undisputed in this case that any claims brought by Plaintiff under § 1681s-2(b) premised on disputes of her credit information submitted by Plaintiff in 2012 or 2014 are barred by the statute of limitations. The parties disagree as to whether new disputes and alleged violations in 2016 and 2017, relating to this same information, are likewise barred. The Court agrees with Plaintiff, and the authorities she cites, that new disputes create new duties on Defendant to investigate, and each failure by Defendant to do so created its own limitations period.

Section 1681s–2(b) of the FCRA requires furnishers to investigate and respond promptly to notice of a dispute regarding the completeness or accuracy of information provided to a consumer reporting agency. This provision of the FRCA can be enforced through a private right of action, but only if the furnisher received notice of the dispute through a consumer reporting agency and failed to investigate the dispute. *See Green v. RBS Nat'l Bank*, 288 F. App'x 641, 642 (11th Cir. 2008) ("The FCRA does provide a private right of action for a violation of § 1681s–2(b), but only if the furnisher received notice of the consumer's dispute from a consumer reporting agency."). Once a furnisher receives notice of such a dispute from a consumer reporting agency, the furnisher is required to:

> (1) conduct an investigation with respect to the disputed information; (2) review all of the relevant information provided in the notice from the consumer reporting agency; (3) report the results of its investigation to the consumer reporting agency; (4) if the investigation reveals

incomplete or inaccurate information, report those findings to the other major consumer reporting agencies to which it provided the incomplete or inaccurate information; and (5) modify, delete, or permanently block the reporting of any information disputed by a consumer that it finds to be inaccurate or incomplete or that cannot be verified after reinvestigation. 15 U.S .C. § 1681s-2(b)(1).

*See Horton v. HSBC Bank*, No. 1:11-CV-3210-TWT, 2013 WL 2452273, at **6–7

(N.D. Ga. Jun. 5, 2013) (Thrash, J.).

The statute of limitations under the FCRA provides:

An action to enforce any liability created under this subchapter may be brought in any appropriate United States district court, without regard to the amount in controversy, or in any other court of competent jurisdiction, not later than the earlier of—

(1) 2 years after the date of discovery by the plaintiff of the violation that is the basis for such liability; or

(2) 5 years after the date on which the violation that is the basis for such liability occurs.

15 U.S.C. § 1681p.

As the district court noted in *Broccuto*, "It is the failure to act as prescribed by the statute after receiving notice of a dispute which creates the cause of action" under § 1681s-2(b), and which constitutes the "violation" for purposes of § 1681p(1). *See* 2008 WL 1969222, at *3. Section 1681s-2(b)(2) imposes a deadline of thirty days from the consumer's dispute to the consumer reporting agency to comply with the requirements of § 1681s-2(b)(1). *See Bruce*, 2015 WL 5797846 at *9; *compare* 15 U.S.C. § 1681s-2(b)(2) ("A person shall complete all investigations,

17

reviews, and reports required under paragraph (1) . . . before the expiration of the period under section 1681i(a)(1) of this title within which the consumer reporting agency is required to complete actions required by that section regarding that information.") *with* 15 U.S.C. § 1681i(a)(1)(A) ("the agency shall . . . conduct a reasonable reinvestigation . . . or delete the item from the file . . . before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller.")

Thus, § 1681s-2(b) creates a new right of action each time the furnisher of information to consumer reporting agencies receives notice of a consumer's dispute from a consumer reporting agency, yet fails to comply with its duties under § 1681s-2(b)(1)(A)–(E). The plain language of the FCRA creates a duty that arises as of the furnisher's receipt from a consumer reporting agency of notification of a consumer's dispute—and nothing in the statute prohibits a consumer from submitting multiple disputes about the same credit information over time. Therefore, "each separate notice of dispute triggers a duty to investigate the disputed information, regardless of whether the information has been previously disputed." *Marcinski*, 36 F. Supp. 3d at 290. And a consumer is not prohibited from gathering and producing additional information over time in an ongoing effort to get an error on his or her credit corrected. Furnishers are thus required to investigate anew, even

if they have previously investigated. It must follow that any new violation of this duty creates a new right of action, with its own limitations period.

This result is in accord with the majority of district courts that have considered this question. The weight of the case law provides that each notification of a consumer's dispute from a consumer reporting agency to a furnisher creates its own duties and corresponding limitations period. *See Escobar v. Penn. Higher Ed. Assistance Agency Servs., LLC*, No. 17-4212, 2018 WL 1740364, at **5–6 (E.D. Pa. Apr. 11, 2018) (acknowledging split, and collecting cases); *Vasquez v. Bank of Am., N.A.*, Civ. A. No. 15-4072, 2015 WL 7075628, at *3 (N.D. Cal. Nov. 13, 2015) (stating that "majority" of courts agree with *Marcinski*); *Bruce*, 2015 WL 5797846, at *9; *Marcinski*, 36 F. Supp. 3d at 290; *Maiteki v. Marten Transp. Ltd.*, 4 F. Supp. 3d 1249, 1254 (D. Colo. 2013); *Larson v. Ford Credit*, 2007 WL 1875989 (D. Minn. 2007) ("each re-report of inaccurate information, and each failure to conduct a reasonable investigation in response to a dispute, is a separate FCRA violation subject to its own statute of limitations"); *Lawrence v. Trans Union LLC*, 296 F. Supp. 2d 582, 587 (E.D. Pa. 2003) (same, with respect to claim under § 1681i for consumer reporting agency's failure to re-investigate); *see also Hyde v. Hibernia Nat'l Bank in Jefferson Parish*, 861 F.2d 446, 450 (5th Cir. 1988) ("each transmission of the same credit report is a separate and distinct tort to which a

separate statute of limitations applies."); *but see Anderson*, 274 F. Supp. 3d at 1233–34; *Hancock*, 2008 WL 2246042, at *2; *Blackwell*, 2008 WL 793476, at *3; *Bittick*, 419 F. Supp. 2d at 919.

Defendant argues that Plaintiff's formulation would result in a "perpetual" statute of limitations, in which furnishers could never achieve finality with regard to their potential liability as to the reporting of an item of information. The Court disagrees. It remains that furnishers can only be sued for violations—and be liable for damages caused by violations—that occurred within two years prior to suit. If a furnisher on January 1, 2018, fails to properly resolve a consumer's claim of false information, then the furnisher will be definitively and forever safe from any suit based on that violation, by January 2, 2020. The furnisher will only face new exposure if, based on new disputes, it yet again fails to appropriately respond. And in that circumstance, any damages would be limited to what occurred within the new period. The Court therefore does not perceive how this circumstance effectuates a "perpetual" statute of limitations. Rather, it is Defendant's formulation that creates a perverse result. Furnishers would, essentially, be forever immunized for failing to address any new or ongoing disputes regarding a reported item, so long as two years have passed after the first time it failed to retract that item. Such a result is contrary to the statutory language and simply makes no sense.

Thus, as the Complaint asserts at least some arguably new violations within the limitations period, the Court is not able to recommend dismissal on grounds of untimeliness.[2] The Motion to Dismiss [11] should be **DENIED**.

### III.   CONCLUSION AND RECOMMENDATION

For the reasons stated above, **IT IS RECOMMENDED** that Defendant's Motion to Dismiss [11] be **DENIED**.

**IT IS SO RECOMMENDED** this 30th day of May, 2018.

_____
JUSTIN S. ANAND
UNITED STATES MAGISTRATE JUDGE

---

[2] Plaintiff appears to concede that any violations based on her 2012 and 2014 disputes regarding the reporting of her HELOC would be time-barred and are not the subject of this lawsuit. Defendant, likewise, does not move to dismiss on the grounds that the Complaint otherwise fails to state a claim on the merits, except than as to timeliness. Thus, the result of this recommendation, if adopted, would be that the claims in Counts I and II of the Complaint would proceed, although limited to any violations of Defendant's duties that occurred within the limitations period.